UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TONEY GALLO | CIVIL ACTION |
| VERSUS | NO. 26-495 |
| KEITH BICKHAM, ET AL. | SECTION: "H"(3) |

## REPORT AND RECOMMENDATION

Toney Gallo, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

Gallo was charged with vehicular homicide and driving while intoxicated, third offense.[1] On July 29, 2019, Gallo pled guilty to vehicular homicide, and, pursuant to the plea agreement, the state district court sentenced him to a term of imprisonment of eighteen years at hard labor with five years to be served without the benefit of probation, parole, or suspension of sentence.[2] Gallo did not appeal his conviction or sentence.

---

[1] R. Doc. 7 at 4, Bill of Information No. 1801969, 8/13/18. A separate bill of information charged Gallo with the misdemeanor offenses of operating a vehicle while under suspension for certain prior offenses, careless operation of a motor vehicle, improper child restraining, no proof of insurance, and no seat belt. *Id*. at 16–17, Bill of Information No. 1801970, 8/13/18.

[2] R. Doc. 7-1 at 23–24, Minute Entry, 7/29/19; *id*. at 93–111, Guilty Plea & Sentencing Transcript, 7/29/19; *id*. at 13, Uniform Commitment Order, 7/29/19. The State *nolle prossed* the charge of operating while intoxicated as well as misdemeanor charges associated with the offense.

On October 16, 2019, Gallo filed a *pro se* request for a copy of the guilty plea and sentencing transcript.[3] On October 24, 2019, the state district court ordered the hearing to be transcribed.[4] By letter dated November 6, 2019, the clerk of court advised Gallo that the transcript would be sent to him upon receipt of it from the court reporter.[5]

On September 14, 2020, Gallo, having not received the requested transcript, filed a second motion seeking a copy.[6] The state district court again ordered the hearing to be transcribed.[7] When Gallo still did not receive a copy of the requested transcript, he filed a writ application with the Louisiana First Circuit Court of Appeal.[8] On January 14, 2021, the court denied the writ application as moot, finding that the state district court granted the request for relief on September 29, 2020.[9]

On March 24, 2021, Gallo, despite still not having received a copy of the requested transcript, filed an application for post-conviction relief claiming: (1) the limitation on the institution of prosecution had expired; and (2) ineffective assistance of counsel for failure to investigate and obtain his medical records, file pretrial motions, and properly advise him about the plea agreement.[10] The State filed

---

[3] *Id.* at 18–19, Production of Verbatim Transcripts, 10/21/19 (signed 10/16/19).

[4] *Id.* at 19–20, Order, 10/24/19.

[5] *Id.* at 25, letter, 11/6/19.

[6] *Id.* at 34, Motion for Boykin Guilty Plea Transcripts, 9/17/20 (signed 9/14/20).

[7] *Id.* at 35, Order, 9/29/20.

[8] A copy of Gallo's writ application cannot be located in the state court record.

[9] *State v. Gallo*, No. 2020 KW 1144, 2021 WL 141220 (La. App. 1st Cir. Jan. 14, 2021); R. Doc. 7-1 at 37–38.

[10] R. Doc. 7-1 at 38–58, First Uniform Application for Postconviction Relief, 3/24/19.

procedural objections, claiming that Gallo's application was untimely, his guilty plea waived all jurisdictional defects, and he failed to carry his post-conviction relief burden. [11] On May 24, 2021, the state district court sustained the procedural objections and dismissed the application. [12]

The Louisiana First Circuit denied Gallo's related writ application on the showing made. [13] On January 21, 2022, the court denied Gallo's subsequent writ application without assigning reasons. [14] Gallo did not seek a writ of review with the Louisiana Supreme Court.

On January 27, 2022, Gallo wrote the clerk of court and advised that he had still not received a copy of his guilty plea and sentencing transcript. [15] The following month, Gallo filed an application for writ of mandamus with the Louisiana First Circuit. [16] On March 3, 2022, the transcript was filed with the state district court and a copy sent to Gallo. [17] On April 8, 2022, the Louisiana First Circuit denied Gallo's writ application as moot. [18]

---

[11] *Id.* at 62–64, State's Procedural Objections to Defendant's Application for Post Conviction Relief, 5/20/21.

[12] *Id.* at 65, Order, 5/24/21.

[13] *State v. Gallo*, No. 2021 KW 727, 2021 WL 4553030 (La. App. 1st Cir. Oct. 5, 2017); R. Doc. 7-2 at 19–20.

[14] *State v. Gallo*, No. 2021 KW 1264, 2022 WL 190211 (La. App. 1st Cir. Jan. 21, 2022); R. Doc. 7-2 at 65–66.

[15] Rec. Doc. 7-1 at 77, letter, 1/31/22 (signed 1/27/22).

[16] *Id.* at 82–89, Application for Writ of Mandamus, 2/17/22 (signed 2/15/22).

[17] *Id.* at 93–111, Guilty Plea & Sentencing Transcript, 7/29/19.

[18] *State v. Gallo*, No. 2022 KW 0170, 2022 WL 1056701 (La. App. 1st Cir. April 8, 2022); R. Doc. 7-1 at 112–13.

On June 7, 2022, Gallo filed a motion for a post-conviction plea agreement pursuant to La. Code Crim. P. art. 930.10.[19] The court denied relief on June 24, 2022, finding that Gallo was sentenced pursuant to a plea agreement.[20]

On December 1, 2022, the Louisiana First Circuit denied Gallo's related writ application, finding:

> Relator does not clearly state what relief he seeks. This court is limited to the review of lower court rulings, or the failure to act on a properly filed petition. Any application filed in this court should set forth what relief has been sought in the lower court, the result of such filing, and the relief relator seeks in this court. Additionally, relator should include in his application, a copy of the petition or ruling at issue, all pertinent minute entries and/or transcripts, and any other portions of the district court record that might support the claims raised in his writ application.[21]

On June 7, 2023, the Louisiana Supreme Court denied Gallo's related writ application.[22] Gallo again sought writs, and on January 18, 2024, the Louisiana First Circuit denied relief.[23] Gallo did not seek a writ of review with the Louisiana Supreme Court.

On July 9, 2024, Gallo filed a second or subsequent application for post-conviction relief claiming his blood draw was not obtained "within a reasonable time" as it was obtained six hours after the accident and that his medical records were

---

[19] R. Doc. 7-1 at 114–21, Motion to Departure From this Title; Post-Conviction Plea Agreement, 6/15/22 (signed 6/7/22).

[20] *Id.* at 122, Order, 6/24/22.

[21] *State v. Gallo*, No. 2022 KW 1035, 2022 WL 17350882 (La. App. 1st Cir. Dec. 1, 2022); R. Doc. 7-2 at 73–74.

[22] *State v. Gallo*, 361 So.3d 978 (La. 2023); R. Doc. 7-2 at 76.

[23] *State v. Gallo,* No. 2023 KW 1069, 2024 WL 196318 (La. App. 1st Cir. Jan. 18, 2024); R. Doc. 7-2 at 134–35.

incomplete.[24] On November 4, 2024, the Louisiana First Circuit granted his related writ application and ordered the state district court to rule on the application for post-conviction relief.[25] On November 13, 2024, the state district court denied relief, finding, "Mover has filed numerous Applications for Post Conviction Relief, the State has filed responses and on 5/24/21 the Court dismissed the application on procedural grounds. On 7/29/2024 the Court again Denied Mover's motion."[26]

On February 24, 2025, the Louisiana First Circuit denied Gallo's related writ application without assigning reasons.[27] The Louisiana Supreme Court denied his related writ application as untimely.[28] The Louisiana Supreme Court granted Gallo's application for reconsideration but denied his writ application.[29]

In the interim, Gallo filed a motion for clarification of sentence.[30] At a hearing on December 3, 2024, the state district court denied the motion.[31]

---

[24] R. Doc. 7-1 at 134–47, Second or Subsequent Uniform Application for Postconviction Relief, 7/22/24 (signed 7/9/24).

[25] *State v. Gallo*, No. 2024 KW 0937, 2024 WL 4664735 (La. App. 1st Cir. Nov. 4, 2024); R. Doc. 7-1 at 171.

[26] R. Doc. 7-1 at 155, Judgment, 11/13/24; *id.* at 176, Order, 11/22/24; *see id.* at 172, letter, 11/14/24.

[27] *State v. Gallo*, No. 2024 KW 1320, 2025 WL 587738 (La. App. 1st Cir. Feb. 24, 2025); R. Doc. 7-2 at 197.

[28] *State v. Gallo*, 419 So. 3d 797 (La. 2025); R. Doc. 7-2 at 199.

[29] *State v. Gallo,* 424 So. 3d 1094 (La. 2026); R. Doc. 7-2 at 200.

[30] R. Doc. 7-1 at 173–75, Motion for Clarification of Sentence as a Matter of Blair v. Stalder, 798 So. 2d 132, 1999-1860 (La. App. 1st Cir. 1/31/01), 11/15/24.

[31] R. Doc. 7 at 3, Minute Entry, 12/3/24.

## I.    Federal Petition

On March 3, 2026, Gallo filed his petition for habeas corpus.[32] Gallo claims: (1) the limitation on the institution of prosecution or for the commencement of trial had expired; (2) ineffective assistance of counsel in waiving the preliminary examination without Gallo's knowledge and failing to obtain his hospital records to "mitigate his defense;" (3) his blood was not drawn within a reasonable time; (4) the blood analysis was tainted; and (5) his medical records were withheld.[33]

The State asserts that Gallo's application is untimely.[34] Alternatively, the State claims that Gallo's claims are unexhausted, his guilty plea waived his right to raise pre-guilty plea claims, and he fails to raise a substantial federal question as to a violation of a constitutional or fundamental right.[35]

In his reply, Gallo asserts that he is entitled to equitable tolling.[36] He further claims that he exhausted his claims.[37] Gallo additionally claims that, due to the alleged "improper" blood test used to induce his plea, he has a right to raise constitutional errors that occurred prior to his guilty plea.[38]

---

[32] R. Doc. 3.

[33] *Id.* at 5–8, 10–12; R. Doc. 3-1. On April 17, 2026, Gallo filed a nearly identical petition in which he raised the same claims. R. Doc. 8.

[34] R. Doc. 10 at 3–7.

[35] *Id.* at 7–12.

[36] R. Doc. 12 at 3.

[37] *Id.* at 4.

[38] *Id.* at 5–8, 12.

## II.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, applies to Gallo's petition filed in this Court on March 3, 2026. The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court, i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated, the State claims that the petition should be denied as untimely, and, alternatively, the claims are unexhausted, waived by the entry of Gallo's guilty plea, and meritless. For the following reasons, the petition is indeed untimely and should be dismissed for that reason.

## III.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsections C and D of 28 U.S.C. § 2244(d)(1) are inapplicable because Gallo does not allege the existence of a newly recognized constitutional right nor does he argue that his claims are based on a factual predicate that could not have been discovered earlier through the exercise of due diligence. The State argues that Subsection A applies.[39] Reading his petition broadly, Gallo may be suggesting that he is entitled to a delayed commencement under Subsection B. Ultimately, Gallo's petition would be untimely under either of these subsections.

**A. Subsection A**

Gallo's federal application is clearly untimely under Subsection A. As noted, under that subsection, the AEDPA's statute of limitations commences on the date a petitioner's state court judgment becomes final. The United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C.

---

[39] R. Doc. 10 at 4–6.

> § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003).

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

Gallo pled guilty and was sentenced on July 31, 2019. His state criminal judgment became final for federal purposes 30 days later, August 30, 2019, when he did not file an appeal or move for reconsideration of sentence.[40] *Roberts v. Cockrell*, 319 F.3d 690, 694–95 (under federal habeas law, a conviction is final when the state defendant does not timely proceed to the next available step in the state appeal process); *see Cousin v. Lensing*, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the period for filing a notice of appeal under La. Code Crim. Proc. art. 914). Accordingly, Gallo's period for seeking federal habeas corpus relief commenced on that date and then expired one year later, on August 31, 2020, unless that deadline was extended through statutory or equitable tolling.[41]

---

[40] Louisiana law provides that a guilty plea waives all non-jurisdictional defects in the proceedings prior to the plea and precludes review of such defects on appeal or on post-conviction relief. *State v. Crosby*, 338 So. 2d 584, 588 (La. 1976). Where, however, grounds do exist for appeal, Louisiana law requires a criminal defendant to move for leave to appeal within 30 days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence. La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1). Failure to move timely for appeal under art. 914 rendered the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So. 2d 336, 338 (La. 1985).

[41] Because the 365th day of the limitations period fell on a Sunday, Gallo's deadline was extended through Monday, August 31, 2020. *See Flanagan v. Johnson*, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed. R. Civ. P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed. R. Civ.

The Court first considers statutory tolling. Regarding the limitations period set forth in § 2244(d)(1), federal law expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). A matter is "pending" for § 2244(d)(2) purposes if "the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219–20 (2002); *Williams v. Cain*, 217 F.3d 303, 310 (5th Cir. 2000) (a matter is "pending" for § 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'").

Gallo had no properly filed state post-conviction or other collateral review related to this case pending in any court to interrupt the running of the AEDPA one-year filing period. While Gallo filed his first motion for a copy of the guilty plea and sentencing transcript in October 2019, requests for transcript copies are not "other collateral review" for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *1 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541, at *1 (E.D. La. Jan. 16, 2002).

While Gallo filed post-conviction motions in 2021, 2022, and 2024, those filings

---

P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

could not revive the one-year federal limitations period that had expired on August 31, 2020. *See Madden v. Thaler*, 521 F. App'x 316, 320 (5th Cir. 2013) (citing *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000)); *Magee v. Cain*, No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), *aff'd*, 253 F.3d 702 (5th Cir. 2001) (citing *Williams v. Cain*, No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000)). Simply put, once the federal limitations period expired, "[t]here was nothing to toll." *Butler*, 533 F.3d at 318.

The Court next considers equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). That said, a petitioner bears the burden of proof to establish entitlement to equitable tolling, *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002), and "equitable tolling is unavailable in most cases...." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999); *accord Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Specifically, "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, **and** (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (emphasis added; internal quotation marks omitted). "[E]quitable tolling applies principally where the defendant actively misleads the plaintiff about the cause of action or prevents the plaintiff from asserting his rights in some extraordinary way." *Jones v.*

11

*Lumpkin*, 22 F. 486, 490 (5th Cir. 2022) (citations omitted). Regarding the two prongs

of the *Holland* test, the United States Supreme Court has explained:

> [W]e have expressly characterized equitable tolling's two components as "elements," not merely factors of indeterminate or commensurable weight. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements"). And we have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other. *See, e.g.*, *Lawrence v. Florida*, 549 U.S. 327, 336-337, 127 S. Ct. 1079, 166 L.Ed.2d 924 (2007) (rejecting equitable tolling without addressing diligence because habeas petitioner fell "far short of showing 'extraordinary circumstances' "); *Pace*, *supra*, at 418, 125 S. Ct. 1807 (holding, without resolving litigant's argument that he had "satisfied the extraordinary circumstance test," that, "[e]ven if we were to accept [his argument], he would not be entitled to relief because he has not established the requisite diligence").

*Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 256 (2016).[42]

Gallo claims that, while incarcerated at the Tangipahoa Jail, he had no access

to legal materials and no inmate counsel to assist him.[43]  He further claims that he is

entitled to equitable tolling because his injuries from the accident required

administrative, hospital, and medical transfers for rehabilitation, and COVID-19

pandemic restrictions caused him to be quarantined on several occasions.[44]

Initially, Gallo submitted evidence that he was moved to Elayn Hunt

Correctional Center in January 2020, approximately eight months before the AEDPA

---

[42] *Menominee Indian Tribe* was not a habeas corpus case. Its equitable tolling discussion, however, is expressly based on the Supreme Court's interpretation of *Holland*; therefore, the reasoning therein is applicable to habeas cases. *See, e.g.*, Brian R. Means, Federal Habeas Manual § 9A:83 (May 2026 Update).

[43] R. Doc. 12 at 4.

[44] R. Doc. 12 at 3.

limitations period expired.[45] Furthermore, prisoners have no constitutional right to either an attorney or "inmate counsel" in state post-conviction proceedings. *See Martinez v. Johnson*, 255 F.3d 229, 239 (5th Cir. 2001). While Gallo claims that his medical condition caused him to be transferred to different facilities, and he was quarantined on occasion due to COVID-19 restrictions, he provides no specific dates or even specific instances when those circumstances prevented him from accessing legal materials and how his medical condition and/or quarantine restrictions adversely affected him from filing his habeas petition prior to March 3, 2026. *Caldwell v. Dretke*, 182 F. App'x 346, 347 (5th Cir. 2006) (finding that the district court did not abuse its discretion in denying equitable tolling where the petitioner did not provide "specific evidence of the impact of his medical conditions on his ability to file a timely application [or of] the lack of evidence regarding why certain documents were necessary to the preparation of his application ....").

Gallo further provides no actual evidence "that lack of adequate legal materials actually *prevented*" him from filing either his applications for post-conviction relief or his federal petition for writ of habeas corpus earlier. *Krause v. Thaler*, 637 F.3d 558, 56162 (5th Cir. 2011) (emphasis in original); *accord Banks v. Hooper*, No. 21-1788, 2024 WL 3100690, at \*5 (E.D. La. April 2, 2024), *appeal dismissed*, No. 24-30387 (5th Cir. Aug. 21, 2024); *see Walck v. Johnson*, 213 F.3d 638, 2000 WL 554680, at \*1 (5th Cir. 2000) (finding that the petitioner did not present rare and exceptional

---

[45] R. Doc. 12-1 at 3.

circumstances because the petitioner was "inconsistent with the dates he was denied access to his legal material[,] he [did] not state why he needed his materials to file his federal habeas petition[,] and he [did] not indicate that he was restrained or prevented from filing within the limitations period."). Nor is the mere existence of the COVID-19 pandemic, without more, an "extraordinary circumstance." *Louria v. Goodwin*, No. 21-3231-P, 2024 WL 3859862, at *3 (W.D. La. Mar. 11, 2024) ("an inmate does not demonstrate extraordinary circumstances because 'his circumstances were not different than any other prisoner attempting to access legal resources, as they all were subject to COVID-19 protocols.'" (citation omitted)), *adopted*, 2024 WL 3852257 (W.D. La. Aug. 16, 2024); *Newman v. Dir., TDCJ-CID*, No. 3:20-CV-3733, 2022 WL 18779708, at *3 (N.D. Tex. Nov. 28, 2022) ("[I]ntermittent lockdowns and diminished access to the law library, even as a result of COVID-19 restrictions, do not constitute 'extraordinary circumstances' warranting equitable tolling.") (citations omitted), *adopted*, 2023 WL 2090988 (N.D. Tex. Feb. 16, 2023).

The fact that Gallo did not receive the transcript of his guilty plea and sentencing until March 3, 2022, also does not entitle him to equitable tolling. The purpose of the federal equitable tolling doctrine relates to the suspension of the federal limitations period under the AEDPA, not state law filing deadlines for state court pleadings. *See Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005); *Davis*, 158 F.3d at 811. Further, a delay in the receipt of a transcript of a proceeding at which Gallo was present does not merit equitable tolling. *Walker v. McCain*, No. 16-16170, 2017

14

WL 5197232, at *5 (E.D. La. Aug. 16, 2017) (citations omitted), *adopted*, 2017 WL 5177928 (E.D. La. Nov. 8, 2017).

Moreover, the fact that Gallo did not obtain a copy of his trial transcript until March 2022 did not prevent him from seeking post-conviction relief earlier in state court or timely filing a habeas petition in federal court. *See Schaffer v. Day*, No. 21-2341, 2022 WL 2232492, at *2 (E.D. La. May 31, 2022) (noting that there is no requirement under Louisiana law to submit a transcript with a post-conviction application (citations omitted)), *adopted*, 2022 WL 2208863 (E.D. La. June 21, 2022), *appeal dismissed*, No. 22-30452, 2022 WL 18448118 (5th Cir. Sept. 6, 2022); *see also Gillman v. Sec'y, Fla. Dep't of Corr.*, 576 F. App'x 940, 944 (11th Cir. 2014) ("Gillman's contention that he should receive equitable tolling because Akes did not return his copy of the trial transcripts is similarly unavailing."). As previously noted, Gallo in fact filed a state application for post-conviction relief prior to his receipt of the transcript, although the AEDPA limitation period had already expired prior to him doing so. Had he filed his first application for post-conviction relief prior to the expiration of the AEDPA limitation period, however, Gallo could have timely filed a protective federal habeas corpus petition while his post-conviction application was still pending and requested that the federal proceeding be stayed while he pursued his state-court remedies. *See, e.g.*, *Pace*, 544 U.S. at 416–17; *Madden*, 521 F. App'x at 321. Although Gallo may have been unaware of these options, a prisoner's *pro se* status, lack of legal training, ignorance of the law and filing deadlines, and even

reliance on inmate counsel do not constitute rare and exceptional circumstances warranting equitable tolling. [46]

The Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under *McQuiggin v. Perkins*, 569 U.S. 383 (2013).[47] In *McQuiggin*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup[ v. Delo*, 513 U.S. 298 (1995)] and *House*[ *v. Bell*, 547 U.S. 518 (2006)], or, as in this case, expiration of the statute of limitations." *McQuiggin*, 569 U.S. at 386. Here, it appears that Gallo claims that he is actually innocent of the crime at issue.

The Fifth Circuit has not explicitly addressed whether a guilty plea precludes a petitioner from raising actual innocence under *McQuiggin*. Before *McQuiggin* was decided, however, the Supreme Court and the Fifth Circuit both permitted such

---

[46] *See, e.g., Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002) ("[N]either 'excusable neglect' nor ignorance of the law is sufficient to justify equitable tolling."); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."); *Smallwood v. Cain*, No. 12-2812, 2013 WL 5757663, at *10 (E.D. La. Oct. 23, 2013) ("The fact that Smallwood is not educated in the law or is reliant upon assistance from inmate counsel on post-conviction does not warrant equitable tolling. In fact, the United States Fifth Circuit has held that circumstances such as lack of legal assistance in preparing post-conviction pleadings, ignorance of the law, lack of knowledge of filing deadlines, and temporary denial of access to or inadequacy of research materials or a prison law library are not sufficient to warrant equitable tolling.") (citations omitted).

[47] Actual innocence constitutes an "equitable *exception*" to the statute of limitations, rather than an equitable basis on which to toll it. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (emphasis original).

claims. *See Bousley v. United States*, 523 U.S. 614 (1998) (remanding the case to permit petitioner an opportunity to make a showing of actual innocence under *Schlup* to excuse a procedural bar to review of his guilty-plea conviction); *see also United States v. Torres*, 163 F.3d 909, 912 (5th Cir. 1999) (applying actual innocence to claim by defendant who pled guilty). Assuming, without deciding, that the actual innocence exception is available to petitioners who pled guilty, Gallo has not made the required showing.

By entering his unconditional guilty plea, Gallo has already conceded under oath that he in fact committed vehicular homicide.[48] Therefore, Gallo faces a daunting burden to present a credible "actual innocence" claim. The United States Supreme Court has explained: "To be credible, such a claim requires petitioner to

---

[48] At the time of the crime, La. Rev. Stat. § 14:32.1 defined vehicular homicide, in relevant part, as follows:

> Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exist and such condition was a contributing factor to the killing:

> (1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.

> (2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

> \*\*\*

> (4)   The operator is under the influence of alcoholic beverages.

support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.

First, the Court considers the evidence that was presented to the state district court as a factual basis for Gallo's guilty plea.[49] On the evening of March 17, 2018, Gallo was driving his Ford 150 on South Range Road in Hammond, Louisiana, when his vehicle left the road and, in an attempt to regain control, he struck a concrete bridge railing.[50] Two eyewitnesses to the crash provided consistent statements to police.[51] Gallo's five-year-old son, who was found unrestrained in his child safety seat, sustained a massive head injury.[52] Deputies observed a broken alcohol bottle near Gallo and a broken Bud Light bottle near the tire of the truck.[53] Deputies detected a strong odor of alcoholic beverage coming from Gallo.[54] Police secured a

---

[49] As the matter was resolved pursuant to a negotiated plea agreement, the facts were not fully developed for the record. At the plea hearing and sentencing, however, the State introduced and filed discovery, including the police report, to form a factual basis for the plea. R. Doc. 7-1, at 105, Guilty Plea & Sentencing Transcript, 7/29/19.

[50] R. Doc. 7 at 33, Tangipahoa Parish Sheriff's Office Police Report, 7/16/18; *id.* at 48, Uniform Motor Vehicle Crash Report, 3/17/18.

[51] *Id.* at 51, Tangipahoa Parish Sheriff's Office Voluntary Statement of Johnny Bourjeois, 3/17/18; *id.* at 52, Tangipahoa Parish Sheriff's Office Voluntary Statement of Adam DiBenedetto.

[52] *Id.* at 48, Uniform Motor Vehicle Crash Report, 3/17/18; *id.* at 54, TPSO Item No. 2018C11923, 3/17/18.

[53] *Id.* at 95, Application for Search Warrant and Order. 3/17/18,

[54] *Id.*

search warrant to seize Gallo's blood to be tested for alcohol content.[55] Gallo's blood was drawn at the hospital approximately four hours after the crash.[56] A blood alcohol analysis determined that Gallo's blood alcohol content was 0.23 grams percent.[57] On May 4, 2018, Gallo's son ultimately succumbed to intracranial and other traumatic injuries.[58]

At the next step of an "actual innocence" analysis, a federal court then considers the new evidence of actual innocence offered by the habeas petitioner. Here, Gallo claims that the blood draw occurred five hours after the accident.[59] He further claims that he underwent extensive surgery and was exposed to anesthesia before the blood draw.[60] He additionally claims that, the following day, a physician ordered that he be given 48 ounces of an alcoholic beverage with his lunch and that a second blood sample was taken thereafter.[61] He claims that this was the blood sample that registered a 0.23%.[62] He, therefore, concludes that the blood alcohol result used to induce his guilty plea was fraudulent and invalid.[63]

---

[55] *Id.*; *id.* at 97, Search Warrant, 3/17/18.

[56] *Id.* at 43, Tangipahoa Parish Sheriff's Office Police Report, 7/16/18; *id.* at 101, Directive to Withdraw Blood for Chemical Testing For Intoxication, 3/17/18; *id.* at 102, Blood Collector's Report, 3/17/18.

[57] *Id.* at 49, Uniform Motor Vehicle Crash Report, 3/17/18; *id.* at 104, Tangipahoa Parish S.O. Evidence Report, 3/17/18; *id.* at 105, Request for Scientific Analysis, undated; *id.* at 106, Scientific Analysis Report, 3/28/18.

[58] *Id.* at 31, General Affidavit of Michael Russell, 3/17/18; *id.* at 119, Case Report, undated; *id.* at 125; *id.* at 127, Coroner's Report, 5/14/18.

[59] R. Doc. 3 at 10–12; R. Doc. 3-1 at 2; R. Doc. 12 at 6.

[60] *Id.* at 12; R. Doc. 12 at 6.

[61] R. Doc. 3-1 at 2; R. Doc. 12 at 7–8.

[62] *Id.*; R. Doc. 12 at 7–8, 10–11.

[63] *Id.* at 3; R. Doc. 12 at 7–8, 10–11.

Gallo, however, presents no actual evidence supporting his allegations. He does not submit any sources, documentary or otherwise, to support his claims that the blood-alcohol result was invalid or fraudulent. Accordingly, he has not met "the threshold requirement" for *McQuiggin* to apply. *McQuiggin*, 569 U.S. at 386.

Finally, the fact that Gallo has asserted ineffective assistance of counsel claims does not provide an exception to his untimely federal filing. The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), and their progeny, simply do not provide a basis for review of an untimely filed federal petition. In *Martinez*, the Court held that a state court imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17). This case, however, is not based on a state-imposed bar to review.

Instead, the bar at issue in this federal court arises from Gallo's failure to meet the federal limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition. *See Moody v. Lumpkin*, 70 F.4th 884, 892 (5th Cir. 2023) ("*Martinez* established a narrow, equitable exception to procedural default; it has no applicability to the statutory limitations period prescribed by AEDPA."). These cases also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA. *Clark v. Davis*, 850 F.3d 770,

20

784 (5th Cir. 2017) ("Neither *Martinez* nor *Trevino* announced a new rule of *constitutional* law, and neither has been made retroactive to cases on collateral review." (emphasis in original); *see In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014). Thus, neither *Martinez* nor *Trevino* excuses the untimely filing of Gallo's federal petition.

### B. Subsection B

To the extent that Gallo claims that he is entitled to a delayed commencement of the federal limitations period under Subsection B because he did not receive the guilty plea and sentencing transcript until March 2022, that argument does not aid him. Regarding Subsection (B), the United States Fifth Circuit Court of Appeals has explained: "In order to invoke § 2244(d)(1)(B), the prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003) (emphasis added); *accord Wickware v. Thaler*, 404 F. App'x 856, 862 (5th Cir. 2010) (A petitioner "can therefore only prevail in applying § 2244(d)(1)(B) by showing that the state's actions were so egregious as to constitute a violation of the United States Constitution.").

As an initial matter, the United States Constitution does not automatically require that a prisoner be provided upon request with a free copy of a transcript for the purposes of seeking collateral review. *See, e.g., United States v. MacCollom*, 426 U.S. 317, 323–24 (1976); *Deem v. Devasto*, 140 F. App'x 574, 575 (5th Cir. 2005).

21

Moreover, the state-court delays in providing Gallo with a copy of the guilty plea and sentencing transcript in no way "prevented" him from seeking either state or federal relief in a timely manner. Because Gallo was present in court when he entered his plea, was convicted, and was sentenced, he was aware of what occurred during those proceedings. Further, under Louisiana law, even without a copy of the transcript, Gallo was permitted to file a state post-conviction application asserting the instant claims. *See Brown v. Cain*, 112 F. Supp. 2d 585, 587 n.2 (E.D. La. 2000) ("Because an inmate does not have an automatic right to free transcripts, the Louisiana State Courts accept post-conviction relief applications without transcripts attached."), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *State ex rel. Bernard v. Criminal District Court Section "J,"* 653 So. 2d 1174, 1175 (La. 1995) (holding that a prisoner who has "identified with factual specificity ... constitutional claims he argues will entitle him to post conviction relief" may "file an application which lacks any supporting documentation without fear of summary dismissal under La. C. Cr. P. art. 926(E)."). In March 2021, Gallo, in fact, filed his first application for post-conviction relief despite the absence of the transcript.[64] He, however, filed that application after the AEDPA limitation period had already expired. Had Gallo timely filed that application for purposes of AEDPA, as explained *supra*, it would have tolled the federal limitations period. Additionally, as previously explained, if he had any concerns as to whether he would be entitled to such tolling based on the filing of his

---

[64] R. Doc. 7-1 at 38–58, First Uniform Application for Postconviction Relief, 3/24/19.

state application, he could have filed a protective federal habeas corpus petition. *See*, *e.g.*, *Pace*, 544 U.S. at 416–17; *Madden*, 521 F. App'x at 321.

In summary: the lack of a transcript did not impede Gallo's ability to pursue relief in a timely manner, and so Subsection B is inapplicable in his case. *See*, *e.g.*, *Puderer v. Vannoy*, No. 17-324, 2018 WL 1319023, at *2–3 (E.D. La. Jan. 26, 2018), *adopted*, 2018 WL 1287621 (E.D. La. Mar. 13, 2018), *certificate of appealability denied*, No. 18-30461, 2019 WL 11866564 (5th Cir. Feb. 12, 2019); *Walker v. McCain*, No. 16-16170, 2017 WL 5197232, at *4–5 (E.D. La. Aug. 16, 2017), *adopted*, 2017 WL 5177928 (E.D. La. Nov. 8, 2017); *Cook v. Cain*, No. 15-1882, 2015 WL 6702290, at *2–3 (E.D. La. Nov. 3, 2015).

Because Gallo is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that he is actually innocent, his federal application for habeas corpus relief had to be filed no later than August 31, 2020, in order to be timely. His March 3, 2026 application was untimely. Therefore, his federal habeas corpus petition must be dismissed with prejudice.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that Toney Gallo's application be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

23

findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 29th day of June, 2026.

EVA J. DOSSIER
UNITED STATES MAGISTRATE JUDGE